UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONATHAN JUDKINS,<br><br>      Plaintiff,<br><br>    v.<br><br>GHALIAH OBAISI, Independent Executor of the ESTATE OF SALEH OBAISI,<br><br>      Defendant. | No. 17 CV 6540<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jonathan Judkins suffered from chronic knee pain while incarcerated at Stateville Correctional Center, where defendant Saleh Obaisi was the medical director. Judkins alleges that on two occasions he reported his knee pain to Obaisi and Obaisi refused to treat him. Judkins accuses Obaisi of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Obaisi's estate moves for summary judgment.[1] For the reasons that follow, the motion is granted.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[1] Obaisi died in 2017, and Obaisi's estate replaced him as the named defendant in the case. For simplicity, I refer to Obaisi individually as the party.

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I construe all facts and draw all inferences in favor of the nonmoving party. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 377–78 (7th Cir. 2020).

## II. Background

Judkins was an inmate at Stateville Correctional Center until November 2016, when he was transferred. [111] ¶¶ 1, 43.[2] Defendant Ghaliah Obaisi is the independent executor of the estate of Dr. Saleh Obaisi, who was the medical director at Stateville. [111] ¶ 2.

Judkins began to experience pain in his knees in 2005. [111] ¶¶ 12–13, 22; [114] ¶¶ 84–85. His knee pain was caused by a combination of a basketball injury, wear and tear over time, and his weight. [111] ¶¶ 47–48, 67. Judkins's doctors told him that losing weight could help alleviate his symptoms. [111] ¶¶ 19–20, 47–48. The pain prevented him from lying down comfortably and bending his knees for long periods of time, such as when using the bathroom. [114] ¶ 84.

Judkins was diagnosed with bursitis, which is inflammation of the lining of the joint; tendinitis, which is inflammation of tendons in the knee; and osteoarthritis, a common form of arthritis that occurs when protective cartilage on the bones wears down over time. [111] ¶¶ 65–67. Osteoarthritis is a chronic degenerative disease and

---

[2] The facts are taken from Judkins's response to Obaisi's Local Rule 56.1 statement of facts, [111], and Obaisi's response to Judkins's statement of additional facts, [114], where both the asserted fact and the opposing party's response is set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). I disregard legal arguments in the statements of facts, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), and ignore additional facts included in response to the asserted fact that do not controvert the asserted fact. N.D. Ill. Local R. 56.1(e)(2).

2

damage to joints is irreversible, though progression of the disease can be slowed. [111] ¶¶ 61, 66. The standard treatment for osteoarthritis is anti-inflammatory medication. [111] ¶¶ 60–61. According to Obaisi's expert witness, bursitis, tendinitis, and osteoarthritis are not objectively serious medical conditions. [111] ¶ 65.

A number of healthcare professionals treated Judkins for knee pain while he was incarcerated. [111] ¶¶ 12–13. At different times, he received arch support for his shoes, elastic knee support, a permit for knee braces, and a permit for a low bunk. [111] ¶¶ 14–16, 32. He was prescribed medications such as Motrin, Tylenol, CTMS, and Colace; ice therapy and heated balms; and steroid injections. [111] ¶¶ 14–18, 21–23, 27, 32, 37–38. Although the steroid injections helped alleviate Judkins's pain, he refused them occasionally. [111] ¶¶ 27, 37, 51. He also received physical therapy. [111] ¶¶ 17–18. Because Judkins had gunshot fragments in his thigh, he could not undergo an MRI, but he did receive multiple x-rays. [111] ¶¶ 16, 21–24, 32, 37.

In September 2012, Obaisi diagnosed Judkins with tendinitis in his knees and recommended an injection to the right patellar tendon. [111] ¶ 25. Obaisi saw Judkins again a month later and observed that Judkins had full range of motion in his knees. [111] ¶ 26. Obaisi advised Judkins to avoid sports for a month and prescribed him Mobic twice daily. [111] ¶ 26. Judkins declined Obaisi's offer of a steroid injection. [111] ¶ 26. In March 2014, Judkins asked for an injection, and Obaisi ordered the medication. [111] ¶¶ 29–30. Six months later, Judkins injured his knee playing basketball, and a physician's assistant referred him to Obaisi. [111] ¶ 31. Obaisi

planned to give Judkins a steroid injection and prescribed Mobic twice daily for 60 days. [111] ¶ 33.

In early 2016, a physician's assistant referred Judkins to Obaisi after he reported that his knees were hurting and tender, and his range of motion was limited when bending. [111] ¶¶ 36–38. On March 23, Judkins saw Obaisi for pain in his right knee. [111] ¶ 39; [114] ¶ 88. The parties dispute what happened at that visit. According to Judkins, Obaisi didn't examine him. [114] ¶ 91; [104-1] 77:11–78:9. Instead, Judkins asked Obaisi about seeing a specialist, and Obaisi responded that there was nothing wrong with Judkins and ordered Judkins out of his office. [114] ¶ 89.[3] According to the medical records, Obaisi examined Judkins, found mild tenderness, gave Judkins Voltaren (a new medication to treat osteoarthritis pain), and offered him a steroid injection, which Judkins refused. [111] ¶ 39.

---

[3] Obaisi objects to a number of facts taken from Judkins's deposition on the ground that the facts are "self-serving testimony by an interested party against a deceased party with no opportunity to defend himself." [114] ¶¶ 87, 89–90, 92. Obaisi does not cite to any case law or rule of evidence to explain why that makes the statements inadmissible. A lot of testimony is self-serving, so that's not a basis for disputing a fact. *See Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020) (a witness's self-interest "does not prevent a trier of fact from crediting a statement based on personal knowledge"); *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (the term self-serving "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment"). Obaisi's statements to Judkins are statements of a party opponent. *See* Fed. R. Evid. 801. That Obaisi is deceased doesn't render the statements inadmissible. "A statement by a declarant, deceased at the time of trial, may be admissible" under Rule 801. *Fischer v. Forestwood Co.*, 525 F.3d 972, 984–85 (10th Cir. 2008) (quoting *Savarese v. Agriss*, 883 F.3d 1194, 1201 (3d Cir. 1989)); *see also United States v. Chappell*, 698 F.2d 308, 311–13 (7th Cir. 1983). That the testimony is unable to be rebutted goes to its weight, not its admissibility. Finally, though Obaisi disputes that he told Judkins to leave his office, he doesn't cite to anything in the record to dispute it, so the fact is admitted.

Judkins reported Obaisi to the assistant warden. [114] ¶ 93. Six days later, Obaisi saw Judkins again. [111] ¶ 40; [114] ¶ 95. According to Judkins, Obaisi unexpectedly summoned him for an appointment. [114] ¶ 94. Obaisi disputes this; according to the medical records, Obaisi had scheduled the March 29 appointment earlier in March, before the March 23 incident. [114] ¶ 94. At the appointment, Judkins asked Obaisi again for a referral to a specialist. [111] ¶¶ 40, 53; [114] ¶ 95, 97. Obaisi denied that request because Judkins's bursitis was mild, so no referral was necessary. [111] ¶¶ 40, 53; [114] ¶ 95, 97. Obaisi renewed the Voltaren prescription for four weeks, and Judkins declined a steroid injection. [111] ¶ 40.[4] A few days later, Judkins filed a written grievance. [114] ¶ 98.

Six months later, Obaisi treated Judkins for intermittent knee pain that he had been feeling for a few weeks. [111] ¶ 41. Judkins's x-ray was normal and he had full range of motion. [111] ¶ 41. Obaisi diagnosed him with bursitis in the right knee and planned to give him a steroid injection and follow up in 10 weeks. [111] ¶ 41. Obaisi saw Judkins again a month later, when Judkins's knee pain had improved. [111] ¶ 42. Obaisi recommended a knee sleeve and Voltaren twice daily for 90 days. [111] ¶ 42.

Judkins was later transferred to three different prisons, where he received the same or similar treatment from other doctors that he received from Obaisi. [111] ¶¶ 43–44, 54–55; [114] ¶ 103. In October 2017, a new doctor examined Judkins and

---

[4] Facts 39 and 40 are admitted over Judkins's objection. Judkins asserts that "the medical record is inaccurate," but only cites to his own statement of additional facts to controvert the fact, rather than sections of the record to controvert it. *See* N.D. Ill. Local Rule 56.1(e)(3).

5

found no abnormalities of the knees and no internal derangement. [111] ¶ 62. Judkins asked that doctor for a referral to a specialist, and the doctor denied the request. [111] ¶¶ 43–44, 54; [114] ¶ 103. The doctor ordered physical therapy and gave Judkins a low-bunk permit. [114] ¶ 105. In January 2018, a nurse practitioner requested approval for Judkins to see a specialist. [114] ¶ 101.

According to Obaisi's expert, neither surgery nor referral to an expert was necessary to treat Judkins's knee issues. [111] ¶¶ 65, 67–70. Judkins had never been diagnosed with dislocation of his knee or torn ligaments, and medication and steroid injections were the only available treatment for his diagnoses. [111] ¶¶ 52, 68. The expert opined that Obaisi provided medically adequate care at all times, including on the two dates in March 2016 when Judkins accuses him of deliberate indifference. [111] ¶ 72, 74, 78–79. For example, Obaisi changed Judkins's medications to address new or changing pain. [111] ¶ 73. The expert saw no evidence that Obaisi's actions on March 23 or 29 caused or exacerbated Judkins's injury, because Judkins had a chronic, degenerative condition. [111] ¶¶ 75–76.[5] Likewise, not referring Judkins to a specialist had no impact on his condition because he was not a candidate for a specialty consultation. [111] ¶ 77.

### III. Analysis

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir.

---

[5] Judkins disputes the expert's findings because, he contends, the expert didn't consider the totality of the evidence. But he doesn't cite to any evidence in the record to controvert the expert's findings. The expert's testimony is admitted.

6

2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate alleging deliberate indifference must show that he faced a "substantial risk of serious harm," and that prison officials knew about that risk and disregarded it by "failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 915 (7th Cir. 2020). So a plaintiff bringing a claim of deliberate indifference to medical needs must offer evidence that he suffered from an objectively serious medical condition, and that the defendant actually knew of and disregarded a substantial risk of harm. *Murphy*, 962 F.3d at 915. Obaisi argues that Judkins has failed to present evidence from which a reasonable jury could find either element.

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would perceive the need for a doctor's attention." *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). Though this typically refers to an "acute" problem (e.g. a fracture or a wound), "chronic or degenerative conditions" that may escalate if not treated properly can also be objectively serious. *McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016); *see also Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (chronic and substantial pain can constitute an objectively serious medical condition). Prison officials are not excused from treating chronic or degenerative conditions simply because the risks of not treating those injuries "reman latent or have not yet reached the point of causing acute or life-threatening injuries." *McDonald*, 821 F.3d at 889. A "broad range of

7

medical conditions" may be sufficient to meet the objective part of the deliberate-indifference test, including arthritis. *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011).

A reasonable jury could find that Judkins had a diagnosis for which a physician mandated treatment, so he had an objectively serious medical condition. It's undisputed that Judkins was diagnosed with bursitis, tendinitis, and osteoarthritis in his knees. And his doctors prescribed a variety of treatments: different types of aspirin, steroid shots, arch support for his shoes, knee braces, a short bunk, ice therapy, an icy balm, a heated balm, and so on. Further, Obaisi's witnesses testified that osteoarthritis is a chronic, degenerative disease. [111] ¶¶ 61, 66. Though the parties don't point to any evidence that Judkins's arthritis, if left untreated, would have developed into an acute injury, it's reasonable to infer based on the frequency of prescribed treatment that receiving no treatment would have resulted in some harm. Finally, Obaisi doesn't dispute Judkins's assertions that his knee pain prevented him from sitting or lying down comfortably for extended periods of time. If a jury credited that testimony, it could find the pain Judkins described so obviously serious that even a lay person would know Judkins required treatment. *See Gray*, 826 F.3d at 1006 (a medical condition that significantly affects someone's daily activities can be objectively serious). A jury could also credit the testimony of Obaisi's expert witness, who said that Judkins didn't suffer from an objectively serious medical condition. But I draw inferences in favor of the nonmovant at this stage, and there is evidence from which a jury could disagree with the expert's conclusion.

Judkins fails, however, to present evidence from which a jury could find that Obaisi was indifferent to his objectively serious medical needs. A medical professional displays deliberate indifference only if his decision was a substantial departure from accepted professional judgment, practice, or standards. *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020). In applying this test, courts look to the "totality of an inmate's medical care" to decide "whether that care evidences deliberate indifference to serious medical needs." *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019) (quoting *Petties v. Carter*, 836 F.3d at 728–29 (7th Cir. 2016)).

There's a genuine factual dispute about whether Obaisi examined Judkins on March 23 and prescribed him any medication. According to Judkins, Obaisi ordered him out of his office without examining him or providing any treatment. According to the medical records, Obaisi examined Judkins, found mild tenderness, gave Judkins Voltaren, and offered him a steroid injection. There is some corroboration for Judkins's account; Obaisi doesn't dispute that Judkins filed a grievance with the warden related to Obaisi's conduct on March 23. And, according to Judkins, Obaisi summoned him to his office a few days later out of the blue. On the other hand, Obaisi documented his response in medical records. Judkins doesn't challenge the admissibility of those medical records, and his suggestion that Obaisi retroactively fabricated them to cover his tracks is purely speculative. Nevertheless, there's evidence from which a jury could credit either Judkins's account or Obaisi's medical records. "Weighing evidence is for the factfinder, not the court." *Thomas v. Martija*,

991 F.3d 763, 767 (7th Cir. 2021). A jury could credit Judkins's testimony that Obaisi refused to treat him in March 2016.

Even so, no reasonable jury could find that Obaisi's refusal to treat Judkins on one day amounted to deliberate indifference in light of the totality of the treatment that Obaisi provided. Judkins doesn't dispute that Obaisi repeatedly and adequately responded to his complaints of knee pain. For example, in September 2012, Obaisi diagnosed Judkins with bursitis and recommended a steroid injection; a month after that, Obaisi offered him a steroid injection and prescribed him Mobic; in April 2014, Obaisi ordered injections after Judkins asked for them; in November 2014, Obaisi recommended a steroid injection and Mobic; in October 2016, Obaisi diagnosed Judkins with bursitis and recommended a steroid injection; a month after that, Obaisi recommended a knee sleeve and Voltaren. Judkins admitted that the steroid injections were effective and helped ease his pain, and Obaisi changed and adjusted Judkins's medications as his pain evolved. Judkins doesn't dispute that he received comparable care from other doctors after he was transferred. Absent treating him on March 23, Judkins doesn't point to any evidence that Obaisi reasonably could have done anything more for him. Obaisi's expert witness offered unrebutted testimony that neither surgery nor a referral to a specialist were necessary to treat Judkins's conditions, and a doctor at another prison also declined to refer Judkins to a specialist. *See Thomas*, 991 F.3d at 772–73 (finding no deliberate indifference where evidence showed defendant doctor "was not alone in his judgment"). To the extent Judkins disagrees with Obaisi's decision not to refer him to a specialist, disagreement

with a doctor's "medical judgment" typically does not constitute deliberate indifference. *Eagan v. Dempsey*, 987 F.3d 667, 689–90 (7th Cir. 2021). And Judkins points to no admissible evidence that not sending him to a specialist was a substantial departure from the standard of care. If true, Obaisi's failure to examine Judkins on March 23 showed poor judgment. But no reasonable jury could rely on that one incident to find that Obaisi deliberately disregarded a risk of substantial harm, given the overall course of treatment Obaisi provided. *See Clark v. Wexford Health Sources, Inc.*, 833 Fed. App'x 18, 22 (7th Cir. 2020) (no deliberate indifference in light of "the totality of the care provided," rather than viewing one medication "in isolation"); *Tuduj v. Lawrence*, 829 Fed. App'x 120, 124 (7th Cir. 2020) (same, where evidence showed "the medical staff evaluated and treated [plaintiff] often to alleviate his symptoms").

Finally, Judkins's argument appears to be that Obaisi delayed, rather than denied, treatment. In such a case, a plaintiff must present "verifying medical evidence" that the delay, not the underlying condition, caused "some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). Put differently, Judkins must show not only a risk of substantial harm—he must also "link that harm or the risk thereof to the defendant." *Thomas*, 991 F.3d at 770. Judkins fails to connect Obaisi's alleged conduct to any harm he suffered. That physical therapy had helped Judkins in the past doesn't bear on whether Obaisi's conduct on March 23 caused any harm. No reasonable jury could find that Obaisi's refusal to treat Judkins's chronic condition

on one or two occasions accelerated the progression of his injury or caused him any additional pain.

## IV. Conclusion

Obaisi's motion for summary judgment [101] is granted. Enter judgment and terminate civil case.[6]

ENTER:

                                                                       _____
                                                                         Manish S. Shah
                                                                         United States District Judge

Date: May 5, 2021

---

[6] The court thanks Jeffrey Kulwin, and the firm Kulwin, Masciopinto & Kulwin, for representing plaintiff as recruited counsel under the trial bar program for the Northern District of Illinois.

12